# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**C. ANTHONY ASHFORD**
Ashford Law Group. P.C.
Chesterton, Indiana 46304



FILED

Jan 23 2015, 10:21 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| J.K., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 64A05-1406-PO-259 |
| | ) | |
| T.C., | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Julia M. Jent, Judge
Cause No. 64D03-1403-PO-1780

**January 23, 2015**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

J.K. appeals the trial court's entry of a protective order against him. We reverse.

**Issue**

J.K. raises two issues. We address only whether there is sufficient evidence to support the issuance of the protective order.

**Facts**

J.K. was married to T.C. On December 10, 2007, T.C. told J.K. that she wanted a divorce. J.K. responded by choking T.C. with his forearm, hurting T.C.'s neck and causing her to fear for her life.[1] There is no evidence J.K. was charged with a crime for this incident. There is no evidence of any other incidents of domestic or other violence or threats by J.K., or any contact at all between J.K. and T.C. since 2008. The parties, who have no children together, were divorced in 2008 and continue to live two doors away from each other in the same townhouse community in Chesteron.

On December 10, 2007, the trial court entered a protective order against J.K. that expired on December 9, 2009. On December 10, 2009, T.C. filed for a second protective order against J.K., which the trial court granted on January 8, 2010, and which expired on December 10, 2011. On December 12, 2011, T.C. filed for a third protective order against J.K., which the trial court granted on February 6, 2012, and which expired on February 3, 2014.[2]

---

[1] This description of the incident is derived from T.C.'s most recent protective order petition. There was no testimony about this incident at the hearing in this case.

[2] The information in this paragraph was not in the record presented to us on appeal. We obtained this information through the statewide protective order database maintained by the Indiana Supreme Court at

2

On March 4, 2014, T.C. filed for a fourth protective order against J.K. The trial court entered an ex parte protective order that same day, prohibiting J.K. from contacting or coming near T.C., including prohibiting him from going to a K-Mart store in Chesterton and Chesterton High School. J.K. timely moved for a hearing challenging this ex parte order.

The trial court conducted a hearing on May 8, 2014. In response to J.K.'s counsel's statement that the protective order was no longer necessary, the trial court stated, "Oh, you know, you have a lot of proving to do to tell me it's unnecessary since it's been necessary since what, '07?" Tr. p. 2. The trial court also noted that the original protective order was not challenged and said, "The original basis is still there counsel. Look at the statute. There is no statute of limitations. If it happened ten years ago we can issue it still. Okay? . . . Where they choose to live is up to them but the reason there's been no issues I would think is because there's been an order." Id. at 2-3. The trial court then asked T.C. whether she still believed a protective order was necessary, and she responded, "[a]bsolutely," without elaborating. Id. at 3. The trial court did not provide J.K. with an opportunity to cross-examine T.C. or present evidence on his own behalf. The trial court also stated its belief that, "there's no limit on how often this can be re-issued." Id. at 4. The trial court affirmed the issuance of the ex parte protective order and, unlike the prior three orders, made it effective for five years, "so that you don't have to keep running back in here." Id. at 5.

mycourts.IN.gov/PORP. We may take judicial notice of any records of a court of this state. See Ind. Evidence Rule 201(b)(5). We do not, however, have ready access to recordings or transcripts of any hearings held before these orders were issued.

3

The order issued after the hearing also prohibited J.K. from purchasing, receiving, or possessing a firearm. J.K. now appeals.

**Analysis**

We begin by noting that T.C. has not filed an appellee's brief. In such a case, we need not bear the burden of developing an argument on behalf of the appellee. Morgal-Henrich v. Henrich, 970 N.E.2d 207, 210 (Ind. Ct. App. 2012). We will reverse if the appellant establishes prima facie error, which means error "'at first sight, on first appearance, or on the face of it.'" Id. (quoting Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1068 (Ind. 2006)). If an appellant does not meet this burden, we will affirm. Id.

The Civil Protective Order Act ("CPOA") "shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." Ind. Code § 34-26-5-1. The CPOA allows a trial court to issue or modify a protective order ex parte if it appears from a petition requesting a protective order that domestic or family violence has occurred. I.C. § 34-26-5-9(a). A party subject to an ex parte protective order is entitled to request a hearing on the order within thirty days. I.C. § 34-26-5-10. A hearing under the CPOA must allow the parties to present evidence and to cross-examine the other party's witnesses. See Essany v. Bower, 790 N.E.2d 148, 152 (Ind. Ct. App. 2003). The CPOA further provides:

> A finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household. Upon a showing of domestic or family violence by a

4

preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence.

I.C. § 34-26-5-9(f). The CPOA provides that a protective order should last for two years, "unless another date is ordered by the court." I.C. § 34-26-5-9(e). "The fact that an order for protection is issued under this chapter does not raise an inference or presumption in a subsequent case or hearings between the parties." I.C. § 34-26-5-9(h).

This court has noted "the significant ramifications of an improperly granted protective order." Barger v. Barger, 887 N.E.2d 990, 993 (Ind. Ct. App. 2008).

> For example, at the state level, violation of the trial court's protective order is "punishable by confinement in jail, prison, and/or a fine." I.C. § 34-26-5-3. Furthermore, after the trial court has issued a protective order, it is a federal offense for a respondent to purchase, receive, or possess a firearm if the protected person is his current or former spouse; a current or former significant other; or a person with whom the respondent has a child. 18 U.S.C. § 922(g). Thus, an improperly granted protective order may pose a considerable threat to the respondent's liberty.

Id. at 993-94. We also recently addressed the circumstances under which a trial court may properly order an extension of a protective order's length:

> [B]ecause an extension is necessarily derived from the original protective order, the trial court's determination must be viewed in light of the continuing harm or the threat of continuing harm that necessitated the issuance of the protective order in the first instance. As an order for protection can impose significant restrictions on a respondent's freedom of movement and other rights, the extension must be equally supported by a court's conclusion that such additional time, in excess of the statutorily two-year approved extension, is necessary to protect the petitioner and to bring about a cessation of the violence or the threat of violence.

5

A.N. v. K.G., 10 N.E.3d 1270, 1272 (Ind. Ct. App. 2014).[3] Any such extension of an initial protective order must be reasonable. See id.

In light of the language of the CPOA and our recent pronouncement in A.N., we do not believe the legislature intended that protective orders can be reissued, renewed, or extended ad infinitum based solely upon evidence related to the protective order's initial issuance, contrary to the trial court's belief. Rather, any such reissuance, renewal, or extension must be based upon evidence that a protective order currently is "necessary to bring about a cessation of the violence or the threat of violence" because of a continuing threat of harm. Moreover, the statute provides for a presumptive length of two years for a protective order, indicating that the legislature did not intend for such orders to be indefinite, absent evidence indicating that a length of more than two years is required by the facts and circumstances of a particular case.[4]

We also conclude it is clear from the CPOA that a petitioner who seeks either re-issuance of a protective order that has expired, or modification of an unexpired protective order, bears the burden of proving by a preponderance of the evidence that a new protective order or extension of an existing order is required. Indiana Code Section 34-26-5-9 applies

---

[3] In A.N., the respondent stated to the trial court that an extension of an existing protective order was warranted, but did not agree to a twenty-eight-year extension. On appeal, we held that although the respondent could not challenge a two-year extension of the order, as provided for by statute, he could challenge the twenty-eighty-year extension. See A.N., 10 N.E.3d at 1271. Here, J.K. at all times has challenged any extension or reissuance of the protective order.

[4] Also, by statute, the lapse of time between an act of violence and the filing of a petition is not a bar to the issuance of a protective order. I.C. § 34-26-5-13. However, remoteness in time may be considered in determining whether a sufficient threat exists to justify the issuance of a protective order. Tons v. Bley, 815 N.E.2d 508, 511 (Ind. Ct. App. 2004). The trial court here did not seem to believe the lapse in time between the single incident in December 2007 and the current protective order request was relevant, but it may be.

to both original issuances and modifications of protective orders, and subsection (f) of the statute squarely places the burden of proof on a petitioner. The trial court here expressly stated that it was requiring J.K. to prove why a new protective order was unnecessary, which was erroneous. The first three orders had expired without incident, and it was incumbent upon T.C. to prove why a new order was needed. It appears the trial court presumed, on the basis of the original protective order, that a new, longer order was proper, but such a presumption is contrary to Indiana Code Section 34-26-5-9(h). Additionally, the trial court did not conduct a hearing that allowed J.K. to present evidence or to cross-examine T.C. Instead, it summarily granted T.C.'s request for a new protective order simply because she asked for one and because one had previously been granted.

The trial court also stated its belief that the fact J.K. had never violated any of the previous protective orders was proof that the orders had worked and that a new, longer protective order was required. In other cases, evidence of violations of a protective order has been cited as justification for extending the order. See A.N. v. K.G., 3 N.E.3d 989, 993-94 (Ind. Ct. App. 2014). It is problematic that either complying or not complying with a protective order may be cited as reasons for extending the order. In fact, it places a respondent in a no-win situation if full compliance with a protective order can be a basis for extending the order or issuing a new one.

We conclude that J.K. has demonstrated prima facie error. On the slim record before us, there simply is insufficient evidence that there is a proper basis for issuing a new, five-year protective order against J.K. In other words, there is insufficient evidence that the order is currently necessary to bring about a cessation of domestic violence or the threat of

such violence. If T.C. believes such evidence exists, she may file another request for a protective order, and the trial court may issue one after conducting a hearing at which the burden of proof is placed upon T.C. and at which both parties have the opportunity to present evidence and cross-examine witnesses.

## Conclusion

We reverse the issuance of the protective order against J.K. for insufficient evidence.

Reversed.

MAY, J., and PYLE, J., concur.