



FILED

Jan 31 2020, 2:08 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-PO-118

## S.H.,
*Appellant,*

–v–

## D.W.,
*Appellee.*

Argued: April 11, 2019 | Decided: January 31, 2020

Appeal from the Bartholomew Superior Court I
No. 03D01-1802-PO-626
The Honorable James D. Worton, Judge

On Petition to Transfer from the Indiana Court of Appeals
Case No. 18A-PO-1413

**Opinion by Justice Slaughter**

Chief Justice Rush and Justice David concur.

Justice Goff dissents with separate opinion in which Justice Massa joins.

**Slaughter, Justice.**

Domestic violence accounts for more than one-fifth of all violent crime in the United States, Bureau of Justice Statistics, *Nonfatal Domestic Violence, 2003–2012*, 1 (2014), and is widely recognized as a public-health crisis that harms both the victim and those within the victim's household. Children exposed to domestic violence are more likely to suffer significant psychological and developmental issues. And they are more likely, as adults, to continue the cycle of violence by becoming either victims or abusers themselves. UNICEF, *Behind Closed Doors: The Impact of Domestic Violence on Children*, 7 (2006).

To protect victims and curb the vicious cycle of domestic violence, our legislature enacted the Indiana Civil Protection Order Act. The Act empowers those threatened with domestic violence to turn to the courts for urgent relief against those who would carry out such threats. But the Act is not one-sided. It balances the need to protect victims of domestic violence against the interests of those against whom a protective order is sought. Because of the potentially severe limitations on a restrained person's liberty, the petitioner must prove the respondent is a present, credible threat to the petitioner or someone in the petitioner's household.

Here, Respondent, S.H., consented to the trial court's entry of an initial two-year protective order against him. But he challenged the later request of Petitioner, D.W., for another two-year protective order. Over S.H.'s objection, the trial court issued the new order. On this record, we hold there was insufficient evidence to support the court's entry of another two-year protective order and thus reverse its judgment and remand with instructions.

## Factual and Procedural History

In 2016, with divorce proceedings pending, D.W. sought an order for protection against S.H., then her husband. In her petition, "Diane" (not her real name) alleged that three days earlier, she returned to the marital house in Bartholomew County where she once lived with "Sam" (also a pseudonym). Believing Sam was away, Diane drove into the attached

garage to collect some belongings. To her surprise, he was home. He grabbed her neck, forced her from her car, and slammed her face into the car door. She tried to escape, but he grabbed her shoulders and threw her onto the concrete floor. She got to her feet and quickly entered the house. But he followed her and threw a table and printer at her. Fearing for her life, she called the police. Once the police arrived, the situation de-escalated.

The day after Diane filed her petition, Sam sought his own order for protection against her. Soon after that, the trial court held a hearing on both petitions. At the hearing, Sam disputed the allegations of her petition but did not object to the entry of a two-year protective order against him. He voluntarily dismissed his own petition in exchange for Diane's agreeing to a restraining order against her in their separate dissolution-of-marriage action. Under the parties' agreement, the trial court entered a two-year protective order against Sam and a restraining order against Diane. The parties introduced no exhibits or testimony supporting either the protective order or the restraining order.

After the trial court entered these orders, the parties went their separate ways. They had no children together, and neither party had reason to be involved in the other's life. Although Sam occasionally visited some relatives who still lived in the Columbus area, he had moved from Bartholomew County to Chicago—more than two-hundred miles away—and started a new relationship.

Fast forward two years to 2018. Just days before the 2016 protective order was set to expire, Diane petitioned the trial court for another protective order against Sam, alleging he had tried to contact her indirectly through relatives' social-media accounts. She claimed the initial protective order "kept him away physically" and said she "would like him to continue to stay away." Initially, the trial court issued a protective order against Sam without notice, in accord with the statute, and scheduled a hearing where it would hear testimony from both parties.

At that hearing, Diane detailed her allegations of Sam's attack from two years earlier. She also recounted that since then Sam twice might have tried to contact her indirectly through social media—once through his

adult child to her; and once through his adult daughter-in-law to her. Both social-media exchanges involved Sam's relatives searching for toys that had belonged to Sam's son. The daughter-in-law explained she had a three-year-old son of her own and thought it would be meaningful for her son to play with the same toys her husband—Sam's son—had played with as a child. When Sam learned of this exchange, he told his daughter-in-law not to contact Diane. Diane explained at the hearing that Sam's daughter-in-law was not a threat and was "one of the sweetest people" she knew. After that first exchange, the daughter-in-law had no further contact with Diane. Diane provided no additional facts to support the other conversation she alleged between her adult child and Sam's.

Diane believed these social-media exchanges could be Sam's attempts to find out where she lived. She told the trial court she continued to fear for her physical well-being and sought an extension of the 2016 protective order to ensure her "safety at least until [her] last child graduates [high school]." She explained that she would not feel any different after a second order expired in 2020. And she admitted that during the protective order's two-year term, Sam had not:

- violated the order;
- visited her residence;
- visited her place of employment; or
- contacted her directly.

After hearing the parties' testimony, the trial court issued another two-year protective order—through 2020—finding as follows:

> 1. That the testimony of the petitioner [Diane] was credible at the time of the original issuance of the order and remains credible today.
>
> 2. That respondent [Sam] continues to deny that any domestic violence has ever occurred.

3. The Court believes based on the totality of the circumstances in this case that there still exist [sic] a current necessity to bring about a cessation to a threat of violence.

After the trial court denied his motion to correct error, Sam appealed.

The court of appeals affirmed. Although acknowledging that "the evidence presented by [Diane] was minimal", the court held that she had satisfied her burden. *S.H. v. D.W.*, 114 N.E.3d 898, 900 (Ind. Ct. App. 2018), trans. granted, 123 N.E.3d 143 (Ind. 2019). "This judge was in the optimal position to determine the credibility of the parties and whether, under the totality of the circumstances, there is a continuing threat of harm." *S.H.*, 114 N.E.3d at 901. The appellate court based its conclusion on the standard of review and the fact that the same trial judge had presided over the 2016 protective order, the 2018 protective order, and the couple's divorce case. *Id.*

Sam then sought transfer, which we granted, thus vacating the appellate decision.

## Discussion and Decision

Applying the governing legal standard, we hold there was insufficient evidence that Sam posed a present, credible threat to Diane to justify the 2018 protective order.

### A. Substantive and procedural requirements of Civil Protection Order Act

This is the first time we have considered the meaning and application of Indiana's Civil Protection Order Act. Enacted in 2002, the Act has the express purpose of promoting the:

(1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and

(2) prevention of future domestic and family violence.

Ind. Code § 34-26-5-1 (2017). Aimed at combating the scourge of domestic and family violence, the Act protects both past and present victims and their children: "[A] person who is or has been a victim of domestic or family violence may file a petition for an order of protection". *Id*. § 34-26-5-2(a).

Under the Act, a trial court has several, non-exclusive options for affording the "relief necessary to provide for the safety and welfare of a petitioner and each designated family or household member." *Id*. § 34-26-5-9(b)(8), 9(f). One option is to prohibit the respondent "from harassing, annoying, telephoning, contacting," or otherwise communicating with the petitioner. *Id*. § 34-26-5-9(b)(2). Another option is to require the respondent to surrender all firearms, ammunition, and deadly weapons to a law-enforcement officer or agency. *Id*. § 34-26-5-9(f). The court can also "[r]emove and exclude a respondent from the residence of a petitioner, regardless of ownership of the residence." *Id*. § 34-26-5-9(b)(3). And a fourth option is to subject the respondent to constant supervision by requiring that he be entered into a law-enforcement database and face real-time GPS (global-positioning-system) tracking. *Id*. §§ 34-26-5-18(7), 34-26-5-9(i). These court-ordered measures may "impose significant restrictions on a respondent's freedom of movement and other rights". *A.N. v. K.G.*, 10 N.E.3d 1270, 1272 (Ind. Ct. App. 2014). Thus, a court faced with a request for protective order must balance, on the one hand, the need to protect actual and threatened victims against, on the other, the onerous burden borne by those erroneously subject to such an order.

Indeed, as our court of appeals has observed, "an improperly granted protective order may pose a considerable threat to the respondent's liberty." *Barger v. Barger*, 887 N.E.2d 990, 994 (Ind. Ct. App. 2008). For example, under state law, violating a protective order is punishable by confinement in jail, prison, or a fine, I.C. § 34-26-5-3(c), and subjects the offender to criminal prosecution for criminal stalking and invasion of privacy. *Id*. §§ 35-45-10-5 (criminal stalking), 35-46-1-15.1 (invasion of privacy). And, under federal law, once a protective order has been entered against the respondent, he may commit a crime if he buys, receives, or possesses a firearm. *Id*. § 34-26-5-3(c) (citing 18 U.S.C. §§ 922(g), 2261, 2262).

To safeguard victims and provide for the prompt resolution of claims, the Act lays out a two-part procedure. First, a trial court may enter an order for protection, either without notice or after notice and a hearing, "[i]f it appears from a petition . . . that domestic or family violence has occurred or that a modification of an order for protection is required." *Id.* § 34-26-5-9(a). Second, if the trial court enters an order without notice, the court must, under some circumstances, hold a hearing within thirty days after service of the order. *Id.* § 34-26-5-10(a). The court must give these hearings priority over other pending matters on its docket. *Id.* § 34-26-5-10(b).

To obtain a protective order, the petitioner must show the respondent "represents"—present tense—"a credible threat to the safety of a petitioner or a member of a petitioner's household." *Id.* § 34-26-5-9(f). Thus, the respondent must pose a threat to a protected person's safety when the petitioner seeks relief. If the petitioner meets this burden, "the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence." *Id.* See also *Costello v. Zollman,* 51 N.E.3d 362, 365 (Ind. Ct. App. 2016). Protective orders have presumptive two-year terms. I.C. § 34-26-5-9(e).

In addition to focusing on the parties' present situation, the Act requires that the threat posed by the respondent be viewed objectively. Not only must there be a present threat, but the threat must be credible—meaning plausible or believable. Thus, the petitioner must prove, by a preponderance of the evidence, that there are reasonable grounds to believe that the respondent presently intends to harm the petitioner or the petitioner's family. By focusing on the parties' present situation, the Act not only allows courts to intervene as the parties' circumstances warrant, but also contemplates that the parties' relationship can change over time.

Entering one protective order does not, by itself, justify entering a second order—or renewing or extending the first order. True, the parties' history is relevant. Indeed, the trial court's extension of a protective order "must be viewed in light of the continuing harm or the threat of continuing harm that necessitated the issuance of the protective order in the first instance." *J.K. v. T.C.*, 25 N.E.3d 179, 181 (Ind. Ct. App. 2015)

(quoting *A.N.*, 10 N.E.3d at 1272). But the existence of a prior order does not **dictate** the outcome of a later dispute between the same parties. "The fact that an order for protection is issued under this chapter does not raise an inference or presumption in a subsequent case or hearings between the parties." *Id*. § 34-26-5-9(h). Thus, the circumstances leading to entry of a prior order generally cannot be the sole basis for entering a new order or renewing or extending the previous one.

We agree with much of the case law interpreting Section 9 that our court of appeals has developed. The trial court should consider the factual basis underlying an initial protective order when determining whether to renew or extend an order or issue a new one. *A.N.*, 10 N.E.3d at 1272. "[A]ny such reissuance, renewal, or extension must be based upon evidence that a protective order **currently** is 'necessary to bring about a cessation of the violence or the threat of violence' because of a continuing threat of harm." *J.K.*, 25 N.E.3d at 182 (emphasis in original). Whether a prior domestic-violence incident is remote in time is also probative—though not determinative—of whether a threat currently exists to justify issuing a protective order. *Tons v. Bley*, 815 N.E.2d 508, 511 (Ind. Ct. App. 2004) (finding that unspecified violent acts occurring eight years earlier were not a sufficient basis for issuing a protective order). An example of a one-time threat that would justify reissuing, renewing, or extending an order for protection is where a respondent—even just once—issues what amounts to a perpetual threat: "You'll never be safe. You'll never know when I'll show up. You'd better always be looking over your shoulder. Because one day—next week, next month, next year—I'll get you. I promise you that."

Unlike that scenario, here we have a single episode of physical violence with no follow-up act, no threat that the violence will recur, and no other reasonable grounds to believe that Sam presently intends to harm Diane or her family. Under these circumstances, the Act does not permit the reissuance, renewal, or extension of the protective order.

## B. No evidence to justify the 2018 protective order

Under our traditional two-tiered standard of review, see Ind. Trial Rule 52(A), we ask whether the evidence supports the trial court's findings and whether its findings support the judgment. Here, the court's findings do not support its judgment to enter the 2018 protective order. The record contains no evidence that Sam posed a present, credible threat to Diane or her family. The court's 2018 order consists of just three findings. First, Diane's "testimony . . . was credible at the time of the original issuance of the [2016] order and remains credible today." Second, Sam "continues to deny that any domestic violence [against Diane] has ever occurred." Third, a protective order is necessary for the court "to bring about a cessation to a threat of violence." The court then used these findings as grounds for its conclusion to enter another two-year protective order against Sam.

Sam raises arguments challenging all three findings, but we need address only one. Even crediting Diane's 2018 testimony, we find that she did not show that Sam is a present threat to her safety or that of her family. Diane explained during her testimony that "the protective order for the last two years . . . kept me safe and I believe it's worked and I am asking for continuance again for another two years to keep me safe." She said she continues to fear for her life because of Sam's past violent acts and has an ongoing fear that he will harm her again. She has a child in high school and said she also fears for her child's safety. She will continue to fear for her family's safety once the protective order expires. And she is convinced she will one day have to "pay" for securing a protective order against Sam.

While recounting her fear of Sam in 2018, Diane admitted that he did not approach her at her home or office and made no contact during the duration of the 2016 protective order. Consistent with these admissions, Sam testified that he has moved on with his life, now lives more than two-hundred miles from Diane in another state, and is involved in a different, ongoing relationship. Sam and Diane have no children in common and no other reason to be involved in each other's lives.

Although there were no violations of the 2016 order, Diane believes the social-media communications that Sam's relatives initiated were not about finding children's toys, but could have been orchestrated by Sam to send her a threatening message through third parties. Diane cited no evidence to support her belief. Her own testimony that her daughter-in-law was one of the "sweetest" people she knew cuts against her claim. And the daughter-in-law's testimony refutes Diane's suspicion that Sam was involved.

Evidence that the respondent violated a protective order may alone justify extending the order's duration because it shows a disregard of judicial efforts to ensure a prior victim's safety and security. But when, as here, the respondent did not violate the prior order, we would put the respondent in an impossible, no-win situation "if full compliance with a [prior] protective order can be a basis for extending the order or issuing a new one". *J.K.*, 25 N.E.3d at 183.

We are mindful that victims of domestic violence often suffer hidden wounds that linger long after external injuries have healed or scarred over. And we do not question the sincerity of Diane's multiple expressions of fear that Sam severely beat her before and will do so again. But a trial court may issue a protective order only if presented with enough evidence that the respondent represents a present, credible threat to the petitioner's safety. Such evidence is simply lacking on this record.

## Conclusion

For these reasons, we reverse the trial court's judgment and remand with instructions to vacate entry of the 2018 protective order against Sam. Today's opinion does not prevent Diane from seeking, or a trial court from entering, further relief against Sam as may be warranted by acts of violence or threats of harm to Diane or her family.

Rush, C.J., and David, J., concur.
Goff, J., dissents with separate opinion in which Massa, J., joins.

ATTORNEYS FOR APPELLANT
R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE
Matthew T. Albaugh
Blayre E. Marley
Faegre Baker Daniels LLP
Indianapolis, Indiana

**Goff, J., dissenting.**

I respectfully dissent from the Court's opinion reversing the trial court. Indiana's Civil Protection Order Act (the Act) **is** Indiana's collective legal response to problems associated with domestic and family violence. The Act, along with Indiana's Protection Order Registry and network of domestic violence victims' advocates, ensures the safety of some of Indiana's most vulnerable citizens. My colleagues seek only to assure fairness to all parties in cases arising under the Act. However, by requiring new evidence of an act or threat to justify extending the protection order beyond its initial two-year period, I believe the Court's opinion today—although confined to the record here—unnecessarily weakens the Act's protection.

Part I of my dissent addresses the majority's interpretation of the evidence needed to justify an extension of a protection order. Part II, in turn, offers guidance and best practices for trial courts in light of today's decision.

## I. Requiring new evidence of conduct by the respondent to justify extending a protection order puts the petitioner at risk of further harm.

The sole issue under consideration is whether the trial court's decision to extend an order for protection for two years was contrary to law. Under our deferential standard of review, I would hold that it was not. *See A.G. v. P.G.*, 974 N.E.2d 598, 598 (Ind. Ct. App. 2012) ("When considering the sufficiency of the evidence supporting a decision to issue or modify a protective order, we do not reweigh the evidence or judge the credibility of witnesses.").

In her initial petition for a protection order, D.W. alleged that S.H., a former military special operator and owner of numerous firearms, grabbed her neck, forced her from her car, slammed her face into the car door, prevented her from escaping by grabbing her shoulders, and

slammed her down onto the concrete floor. By consenting to the two-year protection order, S.H. agreed that he perpetrated "domestic or family violence" against D.W., that he was a "credible threat" to her safety, and that he should be enjoined from directly or indirectly contacting D.W. for the presumptive two-year period contemplated in the Act.[1] *See* Ind. Code § 34-26-5-9(f) (2014).

Two years later, D.W. petitioned the trial court for an extension of the original protection order. This extension required evidence of "continuing harm or the threat of continuing harm that necessitated the issuance of the protective order in the first instance." *J.K. v. T.C.*, 25 N.E.3d 179, 181 (Ind. Ct. App. 2015) (quoting *A.N. v. K.G.*, 10 N.E.3d 1270, 1272 (Ind. Ct. App. 2014)). The trial court judge—who presided over the original order and the couple's divorce proceedings—had only to decide whether S.H. represented a "credible threat to the safety" of D.W. *See id.* (quoting I.C. § 34-26-5-9(f)).

Still, the Court today requires something more. "Evidence that the respondent violated a protective order **may** alone justify extending the order's duration," the majority tentatively concedes. *Ante,* at 10 (emphasis added). But without evidence of new conduct by the respondent, whether in the form of a "follow-up act" or express threat, the Court ultimately concludes that "the Act does not permit the reissuance, renewal, or extension of the protective order." *Ibid.* at 8.

Is it really necessary for our trial courts, in issuing an extension, to wait for the respondent to commit an act of violence or to otherwise violate the original order of protection? I think not. And to conclude otherwise, in my opinion, defeats the Act's purpose of promoting the "protection and safety of all victims of domestic or family violence" and preventing that violence

---

[1] Because S.H. was D.W.'s spouse at the time the original order for protection was entered, and her former spouse at the time it was extended, state and federal law would have precluded S.H. from owning or possessing firearms. *See* I.C. § 34-26-5-3(c) (2014) (citing 18 U.S.C. § 922(g)). In accordance with these statutes, I would remand this matter to the trial court with instructions to enter an order disqualifying S.H. from owning or possessing firearms for the duration of the protection order.

in the future. *See* I.C. § 34-26-5-1. Indeed, under the heightened evidentiary standard imposed by the Court today, it may be too late for many victims to petition for an extension. After all, the "risks of recidivism and harm are high in the context of domestic and family violence."  Model Code on Domestic and Family Violence § 306, cmt. (Nat'l Council of Juvenile and Family Court Judges 1994).[2] And to the extent the majority finds "no other reasonable grounds to believe" that S.H. intends to harm D.W., *ante*, at 8, that conclusion departs from our deferential standard of review and deprives the trial court of deciding whether there's a "credible threat to the safety" of the petitioner. *See J.K.*, 25 N.E.3d at 181.

I agree with the majority that the mere "existence of a prior order does not **dictate** the outcome of a later dispute between the same parties." *See ante,* at 8. Indeed, as our Court of Appeals has instructed, an "extension must be based upon evidence that a protective order **currently** is 'necessary to bring about a cessation of the violence or the threat of violence' because of a continuing threat of harm." *J.K.*, 25 N.E.3d at 182 (quoting I.C. § 34-26-5-9(f)). But a petitioner seeking to extend an order for protection need not present evidence of **new conduct** on the part of the respondent—that is, conduct occurring after entry of the original order.  In my opinion, the petitioner's sworn testimony, so long as the trial court finds it credible, should suffice in meeting this evidentiary requirement. And it's irrelevant whether the prior domestic-violence incident is "remote in time." *See ante,* at 8. Indeed, a "court may not deny a petitioner relief . . . **solely because of a lapse of time** between an act of domestic or family violence and the filing of a petition" I.C. § 34-26-5-13 (emphasis added).

Here, while S.H. may have only perpetrated a "single episode of physical violence" against D.W., *see ante,* at 8, that single episode proved

---

[2] The Act "is based largely on the Model Code on Domestic and Family Violence," among other laws. Protection Order Committee of the Judicial Conference of Indiana, *Protection Order Deskbook* ch. 1, at 1 (rev. ed. 2015), *available at* https://www.in.gov/judiciary/iocs/files/center-bb-po-deskbook.pdf.

extremely violent. And given the severity of that attack, coupled with her testimony that she remained fearful for her and her family's lives, D.W.'s continued subjective fear was objectively reasonable in justifying an extension of the protection order. Though the evidence presented by D.W. may have been minimal, the trial court was still in the best position to weigh the parties' evidence and to judge the credibility of the witnesses.

## II. Trial court judges should develop an adequate record to ensure the proper outcome.

Had the trial court here clearly indicated that the acts resulting in the issuance of the original order, coupled with S.H.'s testimony, were significant enough to justify its extension, I suspect our Court would have reached a different outcome. But the majority's decision today, despite our deferential standard of review, now calls for a much more deliberate approach by a trial court in extending a protection order. Therefore, courts should develop an adequate record and factual basis for issuing and/or extending a protection order. *See* Protection Order Committee of the Judicial Conference of Indiana, *Protection Order Deskbook* ch. 4, at 7–8 (rev. ed. 2015), *available at* https://www.in.gov/judiciary/iocs/files/center-bb-po-deskbook.pdf.[3] *See also id.* ch. 9, at 3 (discussing extensions of protection orders).[4] This record should include testimony from the parties and witnesses along with any other evidence sufficient to allow a reviewing court to determine that a petitioner made a prima facie case satisfying the Act's requirements. And in the context of an extension, the trial court's findings should indicate why a particular fact was significant

---

[3] I cite this publicly available resource not as binding authority but rather for its recommended best practices.

[4] When filing for an **extension** of a protection order, "due process requires the court to conduct a hearing, providing notice to the Respondent and an opportunity for the Respondent to object to the extension." *Protection Order Deskbook* ch. 9, at 2. If the petitioner is unable to timely file for an extension, or if service of process can't be perfected before the original order expires, a new petition for a protective order should be filed, ex parte. *Id.* ch. 9, at 2–3.

to the trial court, especially if other facts seem to weigh against its decision.  *Id.*

These and other best practices will determine the effectiveness of the Act's express goal of ensuring the "protection and safety of all victims of domestic or family violence" and preventing such violence in the future. *See* I.C. § 34-26-5-1 (2019).

# Conclusion

Protecting victims of domestic and family violence is a high priority for our State.  The extraordinary powers embodied in the Act and the relative ease with which they can be invoked are necessary to prevent harm—and possibly death—to vulnerable persons at the hands of their abuser.  To be sure, a protection order may "impose significant restrictions on a respondent's freedom of movement and other rights."  *A.N.*, 10 N.E.3d at 1272.  But the legislature expressly directed courts to construe the Act to promote the **victim's** safety and protection.  The Court's decision today, in my opinion, runs contrary to this intent.

Massa, J., joins.