

I N T H E

# Court of Appeals of Indiana

Christina Lopp,

*Appellant-Petitioner*

FILED

Sep 17 2025, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Jason Lopp,

*Appellee-Respondent*

---

September 17, 2025

Court of Appeals Case No.
24A-DC-3119

Appeal from the Clark Superior Court

The Honorable Carrie K. Stiller, Judge

Trial Court Cause No.
10D05-2106-DC-319

---

**Opinion by Judge DeBoer**
Chief Judge Altice and Judge Pyle concur.

**DeBoer, Judge.**

## Case Summary

[1] Following the dissolution of marriage between Christina Lopp (Wife) and Jason Lopp (Husband), Wife appeals the trial court's division of the marital estate—which was resolved partially through the court's August 23, 2023 order and partially through a settlement agreement in November 2024. Although Wife raises multiple issues, we find the dispositive issue to be whether the trial court's findings were sufficient and an accurate application of the law given the court's deviation from the presumption that an equal division of marital property is just and reasonable. Finding the trial court's order deficient in multiple respects, we reverse and remand.

## Facts and Procedural History

[2] Wife and Husband were married in 2006 and had one child during the marriage. In June 2021, Wife filed a petition for dissolution of marriage. Husband filed a counter-petition a few weeks later.

[3] In July 2022, the parties reached a mediated agreement granting Wife sole legal and primary physical custody of the child and addressing Husband's parenting time. The parties agreed to resolve remaining issues in the future, the trial court approved the mediated agreement, and it entered the decree of dissolution.

[4] On June 15, 2023, the trial court held a hearing on the division of the parties' marital property. The evidence showed the parties owned three real properties:

(1) the marital residence on Westview Drive; (2) the Conner Street Property; and (3) the Beeler Street Property. Wife valued the jointly owned marital residence at $254,624 based on a 2021 appraisal. Husband's 2022 appraisal valued the marital residence between $320,000 and $325,000. The parties agreed that the marital residence had an outstanding mortgage of $132,542. Husband agreed that Wife would retain the marital residence.

[5] Regarding the Conner Street Property, the parties seemingly stipulated to its value and mortgage balance.[1] The parties agreed that the property and mortgage in Husband's name would be awarded to him, and the equity in the property would be included in the marital estate. Husband testified that he bought the Conner Street Property in 2001 before the marriage and added Wife to the title in 2014 when he refinanced the property. He explained that most of the renovations to the property were completed while he lived there and before the parties turned it into a rental property. Wife testified that she "co-managed" the Conner Street rental property with Husband by advertising the property, communicating with tenants, collecting rents, and assisting tenants as needed. Transcript at 36-37.

---

[1] The record reflects contradictory values and mortgage balances testified to and submitted by both parties in relation to the Conner Street Property. The parties' stipulations were not clearly entered on the record. The trial court's order states the parties agreed to a value of $90,615 and a mortgage balance of $41,000. However, the parties' contradictory requests and testimony suggest they may have agreed upon a value of $105,000 and a mortgage balance of $41,615. *See* Transcript at 36, 70, 116, 153; Exhibits at 65, 67; Appellant's Appendix at 46. On remand, the trial court should readdress the stipulated value and mortgage balance of the Conner Street Property.

[6] Husband inherited the Beeler Street Property from his grandparents and never added Wife's name to the deed. Having used funds he inherited rather than marital funds to conduct renovations to the Beeler Street Property, he began renting the home out in 2012. Wife acknowledged the structural work Husband did to the property, but they disagreed on the extent to which Wife contributed to the property's management or upkeep since they began renting it out. Husband testified her contribution was not "significant[,]" but Wife claimed she assisted in the renovations and management of the property by painting, removing drywall, mowing the lawn, cleaning the residence for incoming tenants, and collecting rents. *Id.* at 119. The parties agreed the Beeler Street Property's value was $157,000.

[7] Husband also owned three Edward Jones accounts in his name. The first account was a beneficiary account left to him by his grandparents that had a balance of $84,740. The second account, with a balance of $20,052, was funded by the mandatory distributions he was required to take from the first account. Husband testified that neither of these accounts was commingled with marital funds, and he sought to exclude those accounts from the marital estate. The third account, containing a balance of $21,339, was a 401(k) Husband rolled into an IRA after leaving an employer. He agreed this account should be included in the marital estate. Wife testified that she did not have any retirement savings because the parties had agreed they would use their rental properties as her retirement. She explained that Husband was able to fund his

401(k) because she paid "all of [their] bills[.]" *Id.* at 51. Husband, however, testified that he had not contributed to any retirement account since 2007.

[8] Husband's mother, Candace Fada, testified that she bought a 1998 Chevrolet Silverado for $3,200. She initially intended the truck to be a project Husband and the parties' son could work on together, but the child "said he didn't want it." *Id.* at 15. At the hearing, she requested the truck be returned to her. Wife and Husband both believed Fada had gifted the truck to their son.

[9] The parties also provided testimony related to additional vehicles, Wife's student loan debt, a pontoon boat, and other items of personal property. Moreover, they agreed that each party would keep the assets and liabilities associated with the businesses each owned. Husband requested the Beeler Street Property and his two inherited Edward Jones accounts not be treated as marital property subject to division, but the remainder of the estate be equally divided.[2] *See* Exhibits at 67; Tr. at 119, 122. Wife requested the inherited assets be included in the marital estate and that Husband receive 60% of the marital estate. She asked that Husband receive most of the marital property and be

---

[2] Pursuant to Indiana Evidence Rule 201(b)(5), "[w]e may take judicial notice of any records of a court of this state." *J.K. v. T.C.*, 25 N.E.3d 179, 180 n.2 (Ind. Ct. App. 2015) (taking judicial notice of information available on statewide protective order database not in the record presented on appeal). From our review of our statewide MyCase database, we take judicial notice that the untitled spreadsheet on page 46 of Wife's appendix is an exhibit Husband filed with his proposed findings of fact and conclusions of law and is a modified version of a spreadsheet he submitted at the final hearing. *See* Appellant's App. Vol. 2 at 46. Based upon his revised calculations, it appears that Husband withdrew his request for an equalization payment and asked that Wife receive 55% of the marital estate, subject to the exclusion of the Beeler Street Property and his two inherited Edward Jones accounts. *Compare id.*, *with* Ex. at 67.

ordered to make an equalization payment to Wife for her 40% of the estate. *See* Ex. at 54.

[10] Wife requested findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). On August 23, 2023, the trial court entered its order. The court's order reflected the agreements the parties made related to the following: their individual business interests, the marital residence, the valuation of the Beeler Street Property, inclusion of the equity in the Conner Street Property and Husband's Edward Jones account valued at $21,339 in the marital estate, and Wife's assumption of her student loan debts. *See* Appellant's Appendix Vol. 2 at 47-49. In resolving the outstanding disputes, the trial court found and ordered, in pertinent part:

> 8. That the value of the marital residence . . . shall be the date of filing valuation as appraised by Kentuckiana Appraisals at two hundred fifty[-]four thousand six hundred and twenty-four dollars ($254,624.00).
>
> . . .
>
> 10. That "[t]he Court shall presume that an equal division of the marital property between the parties is just and reasonable." I.C. 31-15-7-5.
>
> 11. That "this presumption may be rebutted by a party who presents relevant evidence . . . that an equal division would not be just and reasonable" given certain factors. I.C. 31-15-7-5.
>
> 12. That a factor that the Court may consider is "[t]he extent to which the property was acquired by each spouse . . . before the marriage." I.C. 31-15-7-5(2)(A).

13. That another such factor that the Court may consider is "[t]he extent to which the property was acquired by each spouse . . . through inheritance." I.C. 31-15-7-5(2)(B).

14. That, given the above factors, the division of the [Beeler Street Property] shall deviate the [sic] statutory presumption, <u>see supra,</u> since Respondent received said real estate as part of an inheritance from his grandparents before the marriage. See I.C. 31-15-1-5(2) [sic].

15. That, further, the Respondent's [inherited] Edward Jones Accounts . . . shall deviate from the statutory presumption, <u>see supra</u>, given that both are result [sic] of an inheritance from Respondent's grandparents and said funds were never commingled with other marital assets.

*Id.* at 49-50 (underlining in original).

[11] The trial court's August 23 order also awarded two vehicles and the pontoon boat to Wife, two vehicles to Husband, and the 1998 Chevy Silverado to Fada. Finally, the court determined there was insufficient evidence presented to determine the value and division of the remaining marital property or whether a child support modification was warranted and ordered the parties to attend mediation to resolve those issues. The court's order did not state the total value of the marital estate or what percentage of the estate each party received.

[12] After the trial court issued its order, the parties went through months of additional proceedings—none of which are relevant to this appeal. In February 2024, a special judge assumed jurisdiction of the case. In November 2024, the special judge approved an order memorializing the parties' agreements related to outstanding child support and marital property disputes that were not

resolved in the trial court August 23 order. Specifically, Husband received as his sole and separate property substantial collections of tools and firearms. *See* Appellant's App. Vol. 2 at 115-16. Wife now appeals.

## Discussion and Decision

## 1. Standard of Review

[13] Wife challenges the trial court's division of the marital estate. "The division of marital property is highly fact sensitive" and we review the trial court's award for an abuse of discretion. *In re Marriage of Marek*, 47 N.E.3d 1283, 1287 (Ind. Ct. App. 2016), *trans. denied*. A trial court abuses its discretion when its decision "is clearly against the logic and effect of the facts and circumstances," or if it "has misinterpreted the law or disregarded evidence of factors listed in the controlling statute." *Id.* We only consider the evidence most favorable to the judgment of the trial court and do not reweigh the evidence or assess witness credibility. *Id.* at 1287-88. The party challenging the trial court's property division "must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors." *Smith v. Smith*, 194 N.E.3d 63, 72 (Ind. Ct. App. 2022) (quoting *Smith v. Smith*, 854 N.E.2d 1, 5-6 (Ind. Ct. App. 2006). Ultimately, we will reverse the trial court's division of marital property "if there is no rational basis for the award." *Meyer v. East*, 205 N.E.3d 1066, 1071 (Ind. Ct. App. 2023) (quoting *Smith*, 194 N.E.3d at 72).

Where, as in the trial court's August 23 order, the court has entered findings of fact and conclusions of law, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). Trial Rule 52(A) findings formalize the trial court's ruling, provide specific information to the parties, and assist our examination on appeal. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind. 1998). "Such findings should contain all of the facts necessary for a judgment for the party in whose favor conclusions of law are found." *Erb v. Erb*, 815 N.E.2d 1027, 1030 (Ind. Ct. App. 2004).

## 2. Marital Estate

A question that must be addressed at the outset is whether the trial court included Husband's inherited assets in the marital estate. "It is well settled that in a dissolution action, all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts." *Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014) (citing Ind. Code § 31-15-7-4(a)). "This 'one pot' theory of marital property ensures that all marital assets are subject to the trial court's power to divide and award." *Marriage of Marek*, 47 N.E.3d at 1288. It also ensures that the trial court values the entire marital pot before it endeavors to divide property. *See Falatovics*, 15 N.E.3d at 110. "While the trial court may decide to award a particular asset solely to one spouse as part of its just and

reasonable property division, it must first include the asset in its consideration of the marital estate to be divided." *Id.*

[16] Husband requested that the Beeler Street Property and two of his Edward Jones accounts be excluded from the marital pot. Wife asked for their inclusion. The trial court's August 23 order did not specifically state whether these assets were part of the marital estate. However, in awarding these assets to Husband, the trial court cited some of the factors listed in Indiana Code section 31-15-7-5 and acknowledged it was deviating from the statutory presumption that an equal division of the *marital property* was just and reasonable. In this context, we find it clear that the trial court included these assets in the marital pot. This was proper procedure, and the exclusion of these assets would have constituted an abuse of discretion.

[17] We acknowledge that a previous panel of this court observed, in dicta, that "Indiana courts have determined that [certain] types of property can [] be excluded from the marital pot, including . . . inheritance[.]" *Morey v. Morey*, 49 N.E.3d 1065, 1072 (Ind. Ct. App. 2016) (citing I.C. § 31-15-7-4(b)(4)). However, a more recent panel held that a "trial court incorrectly relied on *Morey*" when it excluded a portion of a husband's vested retirement benefits from the marital pot. *Gatton v. Gatton*, 249 N.E.3d 626, 636 (Ind. Ct. App. 2024), *reh'g granted in part*, 251 N.E.3d 1104 (2025). In *Gatton*, the court held that "Section 31-15-7-4 says in no uncertain terms that 'the court shall divide the property of the parties, whether . . . owned by either spouse before the marriage [or] acquired by either spouse in his or her own right' after the

marriage and before final separation."  249 N.E.3d at 636-37 (quoting I.C. § 31-15-7-4).

[18]  We agree with *Gatton's* reading of Section 31-15-7-4.  *See Meyer*, 205 N.E.3d at 1072 (holding husband's inherited bank accounts and securities were properly included in the marital pot because "[t]he trial court was required to consider all property obtained prior to the filing of the petition [for dissolution]"); *see also Grathwohl v. Garrity*, 871 N.E.2d 297, 301 (Ind. Ct. App. 2007) ("It has been repeatedly held that [Section 31-15-7-4] requires inclusion in the marital estate of all property owned by the parties before separation, including inherited property.").  To the extent *Morey* suggests that a trial court may exclude inherited property from the marital pot, it misstates the one-pot theory of marital property.[3]  This is not to say, of course, that a party cannot present evidence that they received property as inheritance to rebut the presumption of equal division.  *See* I.C. § 31-15-7-5(2)(B) (permitting trial court to consider "[t]he extent to which [] property was acquired by each spouse . . . before the

---

[3] It appears *Morey* relied on a misreading of *Castaneda v. Castaneda*, 615 N.E.2d 467, 469-70 (Ind. Ct. App. 1993) in support of its proposition that inheritance may be excluded or segregated from the marital pot and divided "outside of the division of the assets in the marital pot."  *See Morey*, 49 N.E.3d at 1072 (citing *Castaneda* in support of excluding inheritance from the marital pot).  However, in *Castaneda*, a panel of this Court held that the trial court did not erroneously exclude wife's inheritance from the marital pot.  615 N.E.2d at 469-70 (stating the sums acquired by wife through inheritance were "required to be included in the marital pot and available for division by the trial court" and declining husband's "invitation to read [the trial court's order] as excluding the inheritance from the pot").  The panel proceeded to find that the trial court considered the factors that allowed a deviation from the statutory presumption when it awarded wife's inheritance entirely to her and therefore did not abuse its discretion.  *Id.* at 470-71.

marriage [or] through inheritance or gift"). But, in the first instance, a court must include all property in the marital pot before determining how to divide it.

## 3. Division of Property

[19] Proceeding to the division of property, Wife argues that the trial court abused its discretion by ignoring her "financial and managerial contributions to the most important marital assets[,]" or alternatively, that the trial court's "findings are incomplete and prevent meaningful review by this court." Appellant's Brief at 9, 10. Because we agree with Wife's second argument and this argument is dispositive, the trial court's order must be reversed.

[20] Trial courts are statutorily required to divide marital property "in a just and reasonable manner[.]" I.C. § 31-15-7-4(b). This analysis starts with the presumption "that an equal division of the marital property between the parties is just and reasonable." I.C. § 31-15-7-5. A party may rebut this presumption, however, by presenting evidence concerning the following factors:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
>> (A) before the marriage; or
>>
>> (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell

in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

I.C. § 31-15-7-5.

[21] When deviating from the statutory presumption of equal division, the trial court *must* consider *all* of these factors and state the reasons for its deviation. *Wilson v. Wilson*, 205 N.E.3d 238, 242 (Ind. Ct. App. 2023); *Randolph v. Randolph*, 210 N.E.3d 890, 901 (Ind. Ct. App. 2023). Furthermore, "[w]hen dividing marital property, the trial court must, at a minimum, be sufficiently apprised of the approximate gross value of the marital estate." *Hernandez-Velazquez v. Hernandez*, 136 N.E.3d 1130, 1136-37 (Ind. Ct. App. 2019).

[22] Here, we find the trial court's August 23 order deficient in several ways. First, the order gives no indication that the court valued the total marital estate and, consequently, whether it was aware that its division of marital property resulted

in a significantly disproportionate allocation of marital property.[4] While the trial court assigned values to the individual assets it divided in its August 23 order, significant amounts of personal property went undivided and instead became the subject of post-final hearing mediation. It does not appear the court contemplated how the remaining property at issue in mediation would impact the division of the marital pot as a whole.

[23] Second, the trial court's findings are incomplete. While Husband argues Wife invited any error related to the trial court's decision to award the Conner Street Property to Husband, this is not so. *See* Appellee's Br. at 15-16. Wife agreed that Husband should receive this property, but she did so in conjunction with her request for a six-figure equalization payment that arguably accounted for some of the equity in the Conner Street Property. *See* Ex. at 54. Consistent with the parties' agreement, the trial court found the Conner Street Property was included in the marital estate, but it neither made findings related to the division of that Property nor ordered an offset in favor of Wife. There is also no indication that Wife agreed to Husband being awarded the non-inherited Edward Jones account without an offset to her, yet the trial court appears to have found that such an arrangement was stipulated to by the parties.

[24] Third, we cannot determine whether the trial court correctly applied the law with respect to the assets inherited by Husband. *See Marriage of Marek*, 47

---

[4] We do not know the precise total value of the marital estate due to the deficiencies in the trial court's order and therefore cannot calculate the division with mathematical certainty.

N.E.3d at 1287 ("We will [] reverse if the trial court has misinterpreted the law or disregarded evidence of factors listed in the controlling statute."). Regarding the Beeler Street Property and the two Edward Jones accounts Husband inherited, the trial court stated that it "may" consider Indiana Code section 31-15-7-5 factors such as acquisition of property before the marriage or through inheritance. Appellant's App. Vol. 2 at 50. The trial court then awarded Husband these assets which resulted in a deviation from the statutory presumption. It justified its decision to do so because Husband inherited the Beeler Street Property before the marriage and the funds in the Edward Jones accounts were inherited (or derived from inherited funds) during the marriage and never commingled with marital funds. Its order did not address any of the evidence before it regarding the parties' monetary or non-monetary contributions to the Beeler Street Property, or their economic circumstances.

[25] While we are prohibited from reweighing the evidence, which may indeed support some level of unequal division, the trial court's inexact application of the law and limited findings do not allow us to infer that it considered *all* the factors in Indiana Code section 31-15-7-5 as *required* when considering whether an unequal division is just and reasonable. *Wilson*, 205 N.E.3d at 242 (noting the trial court must consider all statutory factors when ordering an unequal division); *see also Eye v. Eye*, 849 N.E.2d 698, 703 (Ind. Ct. App. 2006) (quoting *Shumaker v. Shumaker*, 559 N.E.2d 315, 318 (Ind. Ct. App. 1990)) ("Although we acknowledge that '[t]he trial court's exclusion of these factors from its

written findings does not mean that it did not consider them,' we are unable to infer from the findings that the trial court did so.") (internal citations omitted).

[26] Accordingly, we reverse and remand with instructions for the trial court to: (1) set forth the entire value of the marital estate in light of this opinion and the parties' November 2024 agreement regarding the disposition of marital property; (2) divide the entire marital estate; and (3) either follow the statutory presumption that an equal division of marital property is just and reasonable or consider the evidence related to all of the Indiana Code section 31-15-7-5 factors and clearly articulate its reasons for deviating from the presumption.[5]

## Conclusion

[27] For the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

[28] Reversed and remanded.

---

[5] Wife argues that the trial court erred by awarding the 1998 Chevy Silverado to Fada, a nonparty to the divorce proceedings. *See In re Marriage of Dall*, 681 N.E.2d 718, 723 (Ind. Ct. App. 1997) ("It is axiomatic that a divorce decree does not affect the rights of nonparties."); *see also Moore v. Moore*, 482 N.E.2d 1176, 1179 (Ind. Ct. App. 1985) (finding trial court's division of a vehicle owned by a nonparty to the dissolution action was error). Fada was present at the hearing on property division, and she and the parties provided conflicting testimony regarding whether she validly gifted the truck to the parties' son. *See* Tr. at 15, 45-46, 161-62. However, the August 23 order does not clearly explain why the trial court ordered that the truck be returned to Fada. On remand, the trial court should enter a finding as to whether the truck is marital property subject to division and, if so, it should divide it between Husband and Wife in accordance with Indiana Code sections 31-15-7-4 and -5. In the alternative, the court may also find that the vehicle is not marital property—and consequently *not subject to division in these proceedings*—because it belongs to Fada or some other third party.

Altice, C.J., and Pyle, J., concur.


ATTORNEY FOR APPELLANT

Bryan L. Ciyou
Ciyou & Associates, P.C.
Indianapolis, Indiana


ATTORNEY FOR APPELLEE

Yvette LaPlante
LaPlante Legal
Evansville, Indiana