

FILED

Jan 29 2019, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brent R. Dechert
Kokomo, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| C.S., <br> *Appellant-Respondent,* <br><br> v. <br><br> T.K., <br> *Appellee-Plaintiff,* | January 29, 2019 <br><br> Court of Appeals Case No. <br> 18A-PO-1566 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable William C. Menges, Jr., Judge <br><br> Trial Court Cause No. <br> 34D01-1804-PO-45 |

**Robb, Judge.**

# Case Summary and Issue

[1] T.K. was granted an ex parte order for protection from C.S. After C.S. filed a motion to dismiss, the trial court conducted a hearing and again granted T.K.'s request for an order for protection. C.S. now appeals the order for protection raising a single issue for our review, whether there was sufficient evidence to support the issuance of the protective order. Concluding there was insufficient evidence to support the issuance of the protective order, we reverse.

# Facts and Procedural History

[2] C.S. owns a towing and mobile automobile repair business in Kokomo and T.K. is an officer with the Kokomo Police Department. C.S. has a pending criminal case against him for "intimidation, stalking and harassment" in which T.K. is the alleged victim.[1] Transcript of Evidence, Volume II at 4.

[3] On April 20, 2018, T.K. filed a petition for an order for protection against C.S., alleging that she had been a victim of stalking. In her petition, T.K. enumerated three incidents in which she encountered C.S. The first of these incidents occurred within the previous three to four months when T.K. was having lunch with her mother at a Panera Bread restaurant. T.K. stated that

---

[1] Notably, none of the events underlying the pending criminal charges against C.S. were included in T.K.'s petition for an order for protection against C.S. or presented as evidence at the hearing on June 12, 2018.

C.S. "entered the restaurant. [C.S.] is familiar [with] my patrol car that was parked in the parking lot." Appendix of Appellant, Volume 2 at 6.

[4] The second incident occurred on April 13, 2018, in the parking lot of a U-Haul rental location. T.K. stated that she was leaving a nearby store and "observed [C.S.] on top of a U-Haul truck . . . using his cell phone to video tape [sic] [her]." *Id.*

[5] The third and final incident occurred on April 20, 2018, the date T.K. filed her petition. T.K. stated that she:

> [W]ent in the post office to mail a [package] [at] 11:35 am, as I exited the post office, [C.S.] walked right up behind me and followed me out of the [post office]. [C.S.] was not in the parking lot when I pulled in but he is very familiar [with] my vehicle.

*Id.* On the basis of this petition, the trial court granted T.K.'s petition for an order for protection ex parte the same day.

[6] C.S. filed a motion to dismiss the order for protection on May 10, 2018, and the parties appeared for a contested hearing on June 12. There, T.K. testified that it "[j]ust seems like this is a repetitive behavior for someone that's out on bond for stalking, intimidation and harassment. Seems like it is continuing and it's becoming more frequent." Tr., Vol. II at 4. The trial court concluded that,

> If we were to look at the individual acts that have been testified to in the context of a criminal stalking case, I would have to find that [T.K.] has not proved beyond a reasonable doubt that [C.S.]

has committed stalking against her. However, the burden is preponderance of the evidence and what one thing that I've learned over the years is I don't like coincidences and I'm, to start throwing coincidences together, then it starts increasing the weight to be given to them and here we have three coincidences as established by, at least is claimed, by [C.S.]. I think we have gotten over the preponderance of the evidence burden and I think what we have to look at, also, is that if in fact [C.S.] wants to have no more to do with [T.K.] than she wants him to have with her, then a protective order is no harm/no foul, particularly if he's willing to have a no-contact order issued. The only difference between a no-contact order in a criminal case, is that that one is issued, dismissed or modified solely in the discretion of the Judge as opposed to at the request of the petitioner.

* * *

And if the evidence were to be, you know, you're throwing out, okay, he's in Panera Bread which he has a right to be, he walks into Panera Bread, sees her, the best thing you can do is turn around and leave. If he does that, that will not support an invasion of privacy charge because it requires the intentional violation of the order. So I'm going to find that [T.K.] has (inaudible) by a preponderance of the evidence, that stalking has occurred sufficient to justify the issuance of a protective order, . . . that [C.S.]represents a critical threat to the safety of [T.K.], and that the following relief is necessary.

*Id*. at 30-31. C.S. now appeals.

# Discussion and Decision

# I. Standard of Review

Protective orders are similar to injunctions, and therefore in granting an order the trial court must sua sponte make special findings of fact and conclusions thereon. *Hanauer v. Hanauer*, 981 N.E.2d 147, 148 (Ind. Ct. App. 2013) (citing, inter alia, Ind. Trial Rule 52(A) and Ind. Code § 34-26-5-9(a), -(f)). We apply a two-tiered standard of review: we first determine whether the evidence supports the findings, and then we determine whether the findings support the order. *Id*. at 149. In deference to the trial court's proximity to the issues, we disturb the order only where there is no evidence supporting the findings or the findings fail to support the order. *Koch Dev. Corp. v. Koch*, 996 N.E.2d 358, 369 (Ind. Ct. App. 2013), *trans. denied* (2014). We do not reweigh evidence or reassess witness credibility, and we consider only the evidence favorable to the trial court's order. *Id*. The party appealing the order must establish that the findings are clearly erroneous. *Id*. "Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them de novo." *Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011) (citation omitted), *trans. denied*.

*Fox v. Bonam,* 45 N.E.3d 794, 798-99 (Ind. Ct. App. 2015).

Before proceeding to the merits of this appeal, we note that T.K. did not file an appellee's brief. When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party. *Spencer v. Spencer*, 990 N.E.2d 496, 497 (Ind. Ct. App. 2013). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error, namely "error at first sight, on first appearance or on the face of it." *Id*. (*quoting Van Wieren v. Van Wieren*, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006)).

# II. Order for Protection

The Indiana Civil Protection Order Act was enacted to promote the "protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner" and to prevent "future domestic and family violence." Ind. Code § 34-26-5-1. Domestic violence includes stalking which is defined as: "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1; Ind. Code § 34-6-2-34.5 (explaining "[f]or purposes of IC 34-26-5, domestic and family violence also includes stalking . . . whether or not the stalking . . . is committed by a family or household member."). However, stalking "does not include statutorily or constitutionally protected activity." Ind. Code § 35-45-10-1.

Harassment is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2. Impermissible contact "includes but is not limited to knowingly or intentionally following or pursuing the victim." Ind. Code § 35-45-10-3. And, as with stalking, "[h]arassment does not include statutorily or constitutionally protected activity[.]" Ind. Code § 35-45-10-2.

A person who has been a victim of stalking may file a petition for a protective order. Ind. Code § 34-26-5-2(a).

> A finding that domestic or family violence has occurred sufficient to justify the issuance of an order . . . means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household. Upon a showing of domestic or family violence by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence.

Ind. Code § 34-26-5-9(f). We have also noted the "significant ramifications of an improperly granted protective order[,]" which can pose "a considerable threat to the respondent's liberty." *Barger v. Barger*, 887 N.E.2d 990, 993-94 (Ind. Ct. App. 2008). "For example, at the state level, violation of the trial court's protective order is 'punishable by confinement in jail, prison, and/or a fine.'" *Id.* at 993 (quoting Ind. Code § 34-26-5-3).

[12] Here, the trial court concluded that C.S. committed stalking against T.K., not based on any single allegation, but rather three separate allegations that it found to be true. C.S. argues that all of their encounters appear to have been by "chance" or "coincidence" and that "[e]ach time T.K. saw C.S. it was in a public setting where both parties had a legitimate reason to be present." Brief of Appellant at 9. We therefore address each allegation in turn.

[13] The first allegation occurred at a Panera Bread restaurant three to four months before T.K. filed her petition. T.K. testified that she was eating lunch with her mother when she saw C.S. enter the restaurant with another person and order

food to go. T.K. affirmed that C.S. did not approach her or say anything to her and simply left the restaurant after receiving his order. Tr., Vol. II at 6. Aside from the fact that C.S. was familiar with T.K.'s patrol car that was parked in the parking lot, *see* App. of Appellant at 6, T.K. did not present any evidence that C.S. "knowingly or intentionally follow[ed] or pursu[ed]" her into the restaurant, Ind. Code § 35-45-10-3. Because the definition of stalking excludes "statutorily or constitutionally protected activity[,]" Ind. Code § 35-45-10-1, and C.S. had the right to be in a public place, *see, e.g., Kent v. Dulles,* 357 U.S. 116, 125 (1958) ("The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment."), we conclude this allegation cannot support a finding of harassment.

[14] The second allegation occurred in the parking lot of a U-Haul rental location. T.K. stated that she "observed [C.S.] on top of a U-Haul truck . . . using his cell phone to video tape [her]." App. of Appellant, Vol. 2 at 6. At the hearing, C.S. testified that he occasionally does work for U-Haul and that he had received a text from the U-Haul regional manager on Thursday, April 12 at 11:24 pm that a U-Haul truck needed repairs. Tr., Vol. II at 17; Exhibits Volume at 13. The incident occurred the next day, Friday, April 13, when T.K. was leaving a nearby store. C.S. testified that he had climbed on top of a U-Haul truck to take pictures of damage and he produced copies of four pictures, including a text receipt of a picture showing damage that he had sent the regional manager at 10:26 am. Exhibits Volume at 5-8, 13. T.K. stated that she left a store at 10:16 am and was driving through the parking lot when she saw "a pair of pants

with yellow across the bottom of them and I look up and there's [C.S.] on top of the U-Haul van" videotaping her. Tr., Vol. II at 24.

[15] Once again, T.K. affirmed that C.S. did not approach her or say anything to her. Rather, it was T.K. who stopped her vehicle near C.S., as she explained:

> I did stop. I wanted him to know that I see you once again videotaping me. You know, I'm not invisible. That's all I say to him, I drive away . . . .

*Id*. at 25. C.S. testified that when T.K. approached him:

> I was actually climbing down. I'd already taken my four photographs, which you entered [into evidence]. I'd already taken the four photographs of the damage of the truck to send to the manager of U-Haul and I was actually on my way climbing down, paying more attention to climbing down. I actually was in shock that she rolled up and stopped approximately ten foot [sic] from me and waved and said hi. I was actually kind of in shock because my main focus, I didn't have a ladder, to climb up on this truck. My main focus was getting down without falling.

*Id*. at 19.

[16] Even taking the evidence most favorable to the trial court's order, as we must, *see Fox*, 45 N.E.3d at 798, and accepting as fact that C.S. was videotaping T.K. from the top of the U-Haul, we still cannot conclude this allegation constituted harassment. Under certain circumstances, the act of videotaping a police officer in public may well be a "constitutionally protected activity[,]" Ind. Code § 35-45-10-2, which is excluded from the definition of harassment, *see ACLU of*

*Illinois v. Alvarez*, 679 F.3d 583, 595-96 (7th Cir. 2012) (holding Illinois' wiretapping statute criminalizing the audio and video recording of police officers violated the clearly established constitutional right to record a police officer). But, in any event, there is no evidence that C.S. "knowingly or intentionally follow[ed] or pursu[ed]" T.K. into the U-Haul parking lot. Ind. Code § 35-45-10-3. To the contrary, the evidence reveals that C.S.'s presence was requested by U-Haul, that C.S. was on top of the U-Haul truck to take pictures of damage, and that T.K. approached C.S., not the other way around. Under these circumstances, we cannot conclude this allegation supported a finding of harassment.

[17] The third and final allegation occurred at the post office on April 20, 2018. T.K. testified that C.S. was not in the post office when she entered but that as she exited, C.S. "rushed up behind me in an aggressive fashion." Tr., Vol. II at 4. Again, the only evidence that C.S. may have known T.K. was present in the post office was C.S.'s purported familiarity with T.K.'s police car. But despite that, and evidence that C.S. has had a post office box at that location for over ten years, Exhibits Volume at 10-11, we conclude that T.K.'s testimony that C.S. "rushed up behind [her] in an aggressive fashion[,]" Tr., Vol. II at 4, is, for purposes of our standard of review, evidence of impermissible contact. *See* Ind. Code § 35-45-10-3 (impermissible contact "includes but is not limited to knowingly or intentionally following or pursuing the victim").

[18] Thus, our review of the record reveals there was sufficient evidence to establish harassment on only one of the three occasions alleged in T.K.'s petition. As

noted above, "stalking" is defined as "a knowing or an intentional course of conduct involving *repeated or continuing harassment* of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1 (emphasis added). Although we accept T.K.'s testimony that she was "afraid[,]" tr., vol. II at 5, a single incident of harassment is insufficient to support a finding of stalking. *See Johnson v. State*, 721 N.E.2d 327, 332-33 (Ind. Ct. App. 1999) (concluding "the term 'repeated' in Indiana's anti-stalking law means 'more than once'"), *trans. denied*. We therefore conclude C.S. has demonstrated prima facie error and the evidence was insufficient to support a finding of stalking and the issuance of an order for protection.

# Conclusion

[19] Concluding there was insufficient evidence presented at the hearing to support the trial court's issuance of a protective order, we reverse.

[20] Reversed.

Riley, J., and Kirsch, J., concur.