ATTORNEYS FOR APPELLANT

Andrew Tyler Thomas
Fort Wayne, Indiana

Thomas M. Frohman
Bloomington, Indiana



FILED

May 15 2019, 8:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| L.O., *Appellant-Respondent,* <br><br> v. <br><br> D.O., *Appellee-Petitioner.* | May 15, 2019 <br><br> Court of Appeals Case No. 18A-PO-2118 <br><br> Appeal from the Wells Superior Court <br><br> The Honorable Andrew Antrim, Judge <br><br> Trial Court Cause No. 90D01-1806-PO-16 |

**Tavitas, Judge.**

## Case Summary

[1] L.O. appeals the trial court's grant of an order of protection filed by D.O. We reverse.

## Issue

[2] L.O. raises one issue, which we restate as whether the evidence is sufficient to support the granting of an order of protection.

## Facts

[3] On June 7, 2018, D.O. filed a petition for an order for protection and a request for a hearing. D.O. alleged that she had "been a victim of stalking" by her spouse, L.O. Appellant's App. Vol. II p. 14. D.O. alleged that L.O.: (1) had threatened to his family members that he would take D.O.'s children (2) had threatened D.O. regarding money that he thought D.O. took; and (3) erroneously told D.O. to give him checks from Social Security. D.O. asked the trial court to prohibit L.O. from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with her.

[4] The trial court held a hearing on the matter on June 20, 2018. The extent of D.O.'s direct testimony at the hearing follows:

> My only issue was he just kept texting me and texting me and wouldn't leave me alone when I asked him not to. And then his family members started calling me, telling me things he was doing down when he was staying in Kentucky and telling me that he was planning on taking the kids and running off with them and not bringing them back. So, I went to the Ossian Police Department and told them what I was told and they told me to come file a petition so that he couldn't take off with the kids.
>
> * * * * *
>
> I was completely willing to do everything 50/50. I just, when I, you know, when his family members are calling me and telling me that he has these plans and he's doing these things, then, you know, I don't, I don't want to, have to worry that I'm not going to see the kids again when they go with you. We had all intentions of doing everything fairly; he'd have them half the

time, I'd have them half the time, everything was fine. And then I started getting all these phone calls and these text messages stating otherwise.

Tr. Vol. II pp. 5-6. On cross-examination, D.O. clarified that L.O. had not threatened her regarding the children; rather, the only threats pertained to money. D.O. testified that L.O. had never physically harmed or abused her.

[5] L.O. testified that he had never threated D.O. with violence or sexual crimes, he never intended to threaten her with harm of any kind, and he did not intend to harass her. L.O. testified that the only threats he made were to report D.O. to the police and Social Security. L.O. introduced a copy of text messages exchanged between D.O. and L.O. L.O.'s counsel argued that the petition for an order of protection should be dismissed because the evidence failed to establish that L.O. stalked D.O.

[6] At the end of the hearing, the trial court found:

> The Court, in looking at the definition of stalk, Indiana Code 35-45-10-1, that statute reads as used in this chapter, stalking is "a knowing or an intentional course of conduct involving repeated or continued harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated or threatened and that actually causes the victim to feel terrorized, frightened, intimidated or threatened." Then it goes on to say "the term does not include statutorily or constitutionally protected activity." The Court finds that the definition of stalking has been met in this situation. I am going to continue the Order for Protection.

*Id.* at 14.

[7]     The trial court issued a written order finding that D.O. "has shown, by a preponderance of the evidence, that domestic or family violence, . . . or stalking has occurred sufficient to justify the issuance of this Order." Appellant's App. Vol. II p. 6. The trial court then "enjoined" L.O. from "threatening to commit or committing acts of domestic violence, stalking . . . against [D.O. and the children]." *Id.* L.O. was "prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with [D.O.] except: as permitted by the parenting time outlined in this Order." *Id.* at 7. The order for protection was due to expire two years after the date it was issued. L.O. filed a motion to correct error, which the trial court denied. L.O. now appeals.

## Analysis

[8]     We begin by noting that D.O. has not filed an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for the appellee, and we apply a less stringent standard of review. *Jenkins v. Jenkins*, 17 N.E.3d 350, 351 (Ind. Ct. App. 2014). Thus, we may reverse if the appellant establishes prima facie error, which is error at first sight, on first appearance, or on the face of it. *Id.* at 351-52.

[9]     L.O. argues that the evidence was insufficient to support the issuance of an order of protection in favor of D.O. When considering the sufficiency of the evidence supporting a decision to issue or modify an order of protection, we do not reweigh the evidence or judge the credibility of witnesses. *A.G. v. P.G.*, 974

N.E.2d 598 (Ind. Ct. App. 2012). "We look only to the evidence of probative value and reasonable inferences that support the trial court's judgment." *Id.*

[10] The Indiana Civil Protection Order Act ("CPOA") is to be construed to promote (1) the protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner and (2) the prevention of future domestic and family violence. Ind. Code § 34-26-5-1.

> A finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household. Upon a showing of domestic or family violence by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence.

I.C. § 34-26-5-9(f). Under the CPOA, "[a] person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a: (1) family or household member who commits an act of domestic or family violence; or (2) person who has committed stalking under IC 35-45-10-5 or a sex offense under IC 35-42-4 against the petitioner." I.C. § 34-26-5-2(a).

[11] "Domestic or family violence" is defined as the occurrence of at least one of the following acts by the respondent:

> (1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member.

> (2) Placing a family or household member in fear of physical harm.

(3) Causing a family or household member to involuntarily engage in sexual activity by force, threat of force, or duress.

(4) Beating . . . , torturing . . . , mutilating . . . , or killing a vertebrate animal without justification with the intent to threaten, intimidate, coerce, harass, or terrorize a family or household member.

I.C. § 34-6-2-34.5. For the purposes of the CPOA, the definition of "domestic or family violence" also includes "stalking (as defined in IC 35-45-10-1) or a sex offense under IC 35-42-4. . . ." *Id.*

[12] There is no evidence here of L.O. placing D.O. in fear of physical harm or threatening physical harm to D.O. or another household member as described in subsections (1) and (2). There is also no evidence of any actions described in subsections (3) or (4). As such, we will only consider whether D.O. presented sufficient evidence of stalking.

[13] Indiana Code Section 35-45-10-1 provides that stalking is "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Indiana Code Section 35-45-10-2 defines harassment as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Harassment and stalking do "not

include statutorily or constitutionally protected activity[.]" I.C. §§ 35-45-10-1; 35-45-10-2.

[14] The reality is that tensions and emotions during a dissolution often run high. Argumentative or annoying behavior is not uncommon, but it does not rise to the level of threatening behavior. Although D.O. referenced "threats" in her petition and testimony, simply calling the interactions "threats" does not make them so. The text messages between the parties reveal a contentious dissolution with multiple disagreements over money and time with the children. Both parties initiated text messages regarding the children and Social Security money. Our review of the testimony and the text messages, however, reveals no evidence that D.O. felt terrorized, frightened, intimidated, or threatened or that D.O. suffered emotional distress as a result of the text messages. We reached a similar result in *Maurer v. Cobb-Maurer*, 994 N.E.2d 753, 759 (Ind. Ct. App. 2013), where the petitioner presented no testimony at the hearing regarding the effects the respondent's contacts had on her.

[15] Given the sparse record in this case, there was insufficient probative evidence presented at the hearing to support a finding that the contacts would cause a reasonable person and in fact caused D.O. to feel terrorized, frightened, intimidated, or threatened or to suffer emotional distress. Accordingly, there was insufficient evidence to support the trial court's issuance of an order of protection. *See, e.g., Maurer*, 994 N.E.2d at 759 (holding that the evidence was insufficient to demonstrate that the petitioner for an order of protection felt terrorized, frightened, intimidated, or threatened); *cf. Andrews v. Ivie*, 956 N.E.2d

720, 723-25 (Ind. Ct. App. 2011) (holding that the evidence was sufficient where the petitioner testified that the unwelcome messages, gifts, and contacts were "very upsetting," "disturbing," caused her "emotional distress," and made her "very angry").

## Conclusion

There was insufficient evidence presented at the hearing to support the trial court's issuance of an order of protection. Accordingly, we reverse.

Reversed.

Baker, J., and May, J., concur.