

**FILED**

Feb 27 2020, 7:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

## IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| R.H., <br> *Appellant-Respondent*, <br><br> v. <br><br> S.W., <br> *Appellee-Petitioner*. | February 27, 2020 <br><br> Court of Appeals Case No. <br> 19A-PO-2244 <br><br> Appeal from the Jefferson Circuit Court <br><br> The Honorable Donald J. Mote, Judge <br><br> Trial Court Cause No. <br> 39C01-1903-PO-275 |

**Brown, Judge.**

[1] R.H. appeals the trial court's protective order and denial of his motion to correct error. We reverse.

## *Procedural History*

[2] In July 2017, S.W. and R.H. began dating. In May 2018, they flew to Florida for vacation and ended the relationship in September of the same year.

[3] On March 20, 2019, S.W. filed a petition for an order for protection against R.H. alleging she is or had been a victim of domestic or family violence and of stalking, she and R.H. resided together in an intimate relationship, and R.H. attempted to cause physical harm to her, did cause physical harm to her, placed her in fear of physical harm, caused her to involuntarily engage in sexual activity by force, threat of force, or duress, and committed stalking against her. The petition alleged an incident which occurred "[o]n or about 5/17/2018" and an incident which occurred "[o]n or about 2/27/2019." Appellant's Appendix Volume II at 16. On March 21, 2019, the court issued an *ex parte* order for protection.

[4] On May 10, 2019, the court held a hearing at R.H.'s request at which S.W. appeared telephonically, R.H. appeared in person, and the court heard testimony from both. Regarding the May 17, 2018 allegation, S.W. testified:

> We were on vacation together. We decided to go out and go drinking, and when we got back to the hotel he was very upset. We were both drinking. I was trying to – he started yelling at me, cussing at me, calling me horrible things, and when I tried to get away he grabbed my wrist, and I asked him to stop because it hurt really bad, and – and that's it.

Transcript at 11. Regarding the February 27, 2019 allegation, she testified:

> I dropped my daughter off at school, and I was driving to work in Hanover, and I noticed that he was in front of me, so I was trying – at the stop light, so I just tried to stay back, and then he ended up getting off to the other side, the other lane, and then slowing down to where he was behind me, and I kept trying to get around cars, and he would stick behind me all the way to work.

*Id.* During cross-examination, she indicated her relationship with R.H. continued after the May 2018 incident and she moved into his house the next week. R.H. answered affirmatively when asked whether "May 16th and 17th [was] the last night of your vacation," *id.* at 18, testified they flew back to Indiana the next day, and submitted as Respondent's Exhibit 1 copies of text messages he and S.W. exchanged between May 16th and 17th, which include one party's messages of "I seriously do not remember any of that. I'm sorry," "I really don't want to sit by myself," "Ask him to change seats with me," and "Well….. I love you"; as well as the second party's message of "Love you. You'll be fine." *Id.* at 18. The court admitted Respondent's Exhibit 1.

[5] The court stated that it did have "concern related to the allegations" and found by a preponderance of the evidence that "the incident on May 17th, 2018 occurred" and "the allegations as to the February 27th, '19 date and that specific date, the Court finds uh – dispositive that the evidence is compelling." *Id.* at 28. It entered a permanent protection order which would remain in effect through May 10, 2021, and stated it "has a pretty good understanding based on his background as it relates to the dynamics of intimate partner violence, and

the sort of the back and forth," and the fact that S.W. had "either apologized or remained on the plane and continued with her relationship with [R.H.] subsequent to" the 2018 incident was not compelling. *Id.* at 29. The court's order indicated R.H. "represents a credible threat to the safety" of S.W. or a member of her household and she "has shown, by the preponderance of the evidence, that domestic or family violence or stalking has occurred sufficiently to justify" the order. Appellant's Appendix Volume II at 26.

[6] On June 10, 2019, R.H. filed a motion to correct error, and on July 30, 2019, the court began a hearing at which R.H. presented argument, S.W. indicated she did not have any new evidence to submit and that she and her daughter "don't feel safe as far as not having the protective order," and the court accepted an affidavit of R.H. as newly discovered evidence. Transcript at 41. The affidavit stated: he "was on his way to work on March 1, 2019, [and] saw [S.W.] on the road but did not see her until she pulled beside me," she was "driving very close beside me on Clifty Drive," he yielded to allow her to pass, he noticed it was her as she was passing, she stayed approximately one to two car lengths ahead of him until she reached the stoplight, at which point he merged in behind her and continued on his way to work in Jeffersonville, and she turned off of State Road 62 between Madison and Jeffersonville. Appellant's Appendix Volume II at 35. The affidavit also included an attached document, which it indicated was a "copy of [R.H.'s] work order from March 1, 2019." *Id.*

On August 26, 2019, the court continued the hearing and, on the same day, entered a modified protective order which expired on March 20, 2021, permitted R.H. to attend his children's sporting events, and indicated that S.W.

> has shown, by a preponderance of the evidence, that domestic or family violence, stalking, a course of conduct involving repeated or continuing contact with Petitioner that is intended to prepare or condition the Petitioner for sexual activity (as defined in Ind. Code § 35-42-4-13), or repeated acts of harassment has occurred sufficient to justify the issuance of this Order.

*Id.* at 10. The court denied the motion to correct error in an order also issued that day indicating it found "sufficient evidence exists to support its previous ruling that [R.H.] committed an act of domestic or family violence" against S.W. *Id.* at 6. It further reasoned:

> 2. In his Motion to Correct Error, [R.H.] relies on the following which occurred after the physical altercation giving rise to the Court's original Protective Order: [S.W.] indicated in a text message that she did not recall the night[']s events; [S.W.] invited [R.H.] to sit beside her on the trip home and indicated she loved [R.H.]; [S.W.] did not report the incident to law enforcement; and [S.W.] moved in with [R.H.] after the incident.

> 3. The Court does not find [S.W.'s] text messages indicated she had no recollection of the matter dispositive. Clearly [S.W.] made efforts to reconcile with [R.H.] after the incident. It is true that [S.W.] did not report the incident to law enforcement, and that she later moved in with the [R.H.] for a time. But a majority

of victims of domestic violence do not call the police for a variety of reasons[1].

4. Here, the burden of proof is a preponderance of the evidence, not beyond a reasonable doubt. The Court again relies on the testimony of [S.W.], including both content and delivery, and finds her testimony to be credible.

*Id.* at 6-7.

## *Discussion*

We begin by noting that S.W. has not filed an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for the appellee, and we apply a less stringent standard of review. *L.O. v. D.O.*, 124 N.E.3d 1237, 1239 (Ind. Ct. App. 2019) (citing *Jenkins v. Jenkins*, 17 N.E.3d 350, 351 (Ind. Ct. App. 2014)). Thus, we may reverse if the appellant establishes *prima facie* error, which is error at first sight, on first appearance, or on the face of it. *Id.* (citing *Jenkins*, 17 N.E.3d at 351-52).

R.H. argues insufficient evidence supports the trial court's finding that the May 2018 incident amounted to an act of domestic or family violence. He contends he did not cause or attempt to cause her physical harm, the evidence does not establish she actually suffered "physical harm" under the term's plain and ordinary meaning, her testimony establishes she suffered momentary pain and

---

[1] A footnote appearing here states: "https://www.thehotline.org/resources/law-enforcement-responses/ (60% of victims who did not previously involve police indicate they did not do so out of a desire for privacy)." Appellant's Appendix Volume II at 7.

no evidence establishes her wrist was impaired or that his action had any physical effects on her beyond the moment he let go of her, and that in the absence of actual physical harm the action of grabbing her wrist does not establish evidence of an attempt to cause physical harm. Alternatively, he maintains that grabbing her wrists a week before she moved in with him and nearly a year before she sought a protective order does not establish that he represents a credible threat to her safety necessitating a protective order; contends that the court erred in ignoring what happened between them in the period between the incident in May 2018 and March 2019 when she filed the petition; and cites to this Court's decisions in *Tons v. Bley*, 815 N.E.2d 508, 511 (Ind. Ct. App. 2004), and *J.K. v. T.C.*, 25 N.E.3d 179 (Ind. Ct. App. 2015), for the proposition that "when there is a lapse in time between an allegation of violence and the filing of petition, the court must take account of the factual context – the length of time as well as what happened between the parties during that time." Appellant's Brief at 17-18. He further argues insufficient evidence supports the finding that he stalked her, the court found only one incident that would amount to stalking to be credible, and that, to constitute stalking sufficient to warrant issuance of a protective order, harassment must be repeated and continuous.

[10]   Protective orders are similar to injunctions, and therefore in granting an order the trial court must make special findings of fact and conclusions thereon. *See Hanauer v. Hanauer*, 981 N.E.2d 147, 148 (Ind. Ct. App. 2013) (citing Ind. Trial Rule 52(A) and Ind. Code §§ 34-26-5-9(a), -(f)). We apply a two-tiered standard

of review: we first determine whether the evidence supports the findings, and then we determine whether the findings support the order. *Id.* at 149. "Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them de novo." *C.S. v. T.K.*, 118 N.E.3d 78, 81 (Ind. Ct. App. 2019) (quoting *Fox v. Bonam*, 45 N.E.3d 794, 798-799 (Ind. Ct. App. 2015)).

[11] The Indiana Supreme Court recently considered for the first time the meaning and application of Indiana's Civil Protection Order Act (the "Act") in *S.H. v. D.W.*, (filed January 31, 2020), Ind. No. 19S-PO-118. While this case dealt with the issuance of a second, subsequent two-year protective order, its words are instructive here. The Court noted that, "[b]ecause of the potentially severe limitations on a restrained person's liberty, the petitioner must prove the respondent is a present, credible threat to the petitioner or someone in the petitioner's household," and instructed:

> [T]he Act has the express purpose of promoting the:
>
> > (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and
> >
> > (2) prevention of future domestic and family violence.
>
> Ind. Code § 34-26-5-1 (2017). Aimed at combating the scourge of domestic and family violence, the Act protects both past and present victims and their children: "[A] person who is or has been a victim of domestic or family violence may file a petition for an order of protection". *Id.* § 34-26-5-2(a).

\* \* \* \* \*

[A] court faced with a request for protective order must balance, on the one hand, the need to protect actual and threatened victims against, on the other, the onerous burden borne by those erroneously subject to such an order.

\* \* \* \* \*

Indeed, as our court of appeals has observed, "an improperly granted protective order may pose a considerable threat to the respondent's liberty." *Barger v. Barger*, 887 N.E.2d 990, 994 (Ind. Ct. App. 2008). For example, under state law, violating a protective order is punishable by confinement in jail, prison, or a fine, I.C. § 34-26-5-3(c), and subjects the offender to criminal prosecution for criminal stalking and invasion of privacy. *Id.* §§ 35-45-10-5 (criminal stalking), 35-46-1-15.1 (invasion of privacy). And, under federal law, once a protective order has been entered against the respondent, he may commit a crime if he buys, receives, or possesses a firearm. *Id.* § 34-26-5-3(c) (citing 18 U.S.C. §§ 922(g), 2261, 2262).

To obtain a protective order, the petitioner must show the respondent "represents" – present tense – "a credible threat to the safety of a petitioner or a member of a petitioner's household." *Id.* § 34-26-5-9(f). Thus, the respondent must pose a threat to a protected person's safety when the petitioner seeks relief. If the petitioner meets this burden, "the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence." *Id. See also Costello v. Zollman*, 51 N.E.3d 361, 365 (Ind. Ct. App. 2016).

In addition to focusing on the parties' present situation, the Act requires that the threat posed by the respondent be viewed objectively. Not only must there be a present threat, but the threat must be credible – meaning plausible or believable. Thus, the petitioner must prove, by a preponderance of the evidence, that there are reasonable grounds to believe that the respondent

presently intends to harm the petitioner or the petitioner's family. By focusing on the parties' present situation, the Act not only allows courts to intervene as the parties' circumstances warrant, but also contemplates that the parties' relationship can change over time.

\* \* \* \* \*

Whether a prior domestic-violence incident is remote in time is also probative – though not determinative – of whether a threat currently exists to justify issuing a protective order. *Tons v. Bley*, 815 N.E.2d 508, 511 (Ind. Ct. App. 2004) (finding that unspecified violent acts occurring eight years earlier were not a sufficient basis for issuing a protective order). An example of a one-time threat that would justify reissuing, renewing, or extending an order for protection is where a respondent – even just once – issues what amounts to a perpetual threat: "You'll never be safe. You'll never know when I'll show up. You'd better always be looking over your shoulder. Because one day – next week, next month, next year – I'll get you. I promise you that."

*S.H.*, slip op. at 3-4.

[12] We note that at the relevant time Ind. Code § 34-6-2-34.5 provided in part that "Domestic or family violence" means the occurrence of at least one of the following acts by the respondent: "(1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member"; "(2) Placing a family or household member in fear of physical harm"; or "(3) Causing a family or household member to involuntarily engage in sexual activity by force, threat of force, or duress." (Subsequently amended by Pub. L. No. 141-2019, § 2 (eff. July 1, 2019)). For purposes of the Act, "domestic or

family violence" also includes "stalking (as defined in IC 35-45-10-1) or a sex offense under IC 35-42-4 . . . ." *L.O.*, 124 N.E.3d at 1240 (citing Ind. Code § 34-6-2-34.5). Ind. Code § 35-45-10-1 provides that "Stalking" is

> a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened. The term does not include statutorily or constitutionally protected activity.

"Harassment" means "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2. "'Impermissible contact' includes but is not limited to knowingly or intentionally following or pursuing the victim." Ind. Code § 35-45-10-3 (subsequently amended by Pub. L. No. 266-2019, § 14 (eff. July 1, 2019)).

[13] Regarding the May 2018 allegation, S.W. presented testimony that R.H. started yelling at her, cussing at her, and calling her horrible things, that he grabbed her wrist when she "tried to get away," and that she asked him to stop "because it hurt really bad, and – and that's it." Transcript at 11. The record reveals that the parties immediately reconciled. Further, this incident occurred ten months before S.W. filed for the protective order. Regarding the February 2019 allegation, S.W. presented testimony that she was driving to work in Hanover after dropping her daughter at school when she noticed he was in front of her

and that he "ended up getting off to the other side, the other lane, and then slowing down to where he was behind me" and he "would stick behind me all the way to work." *Id.* This single incident is insufficient to establish stalking, and the record does not contain evidence that S.W. suffered emotional distress.

[14] Accordingly, we conclude R.H. has presented a case of *prima facie* error that there was insufficient evidence to support the issuance of a protective order. *See S.H.*, No. 19S-PO-118, slip op. at 6 ("[A] trial court may issue a protective order only if presented with enough evidence that the respondent represents a present, credible threat to the petitioner's safety.").

[15] For the foregoing reasons, we reverse the trial court's order of protection.

[16] Reversed.

Baker, J., and Riley, J., concur.