## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 16 2020, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard D. Martin
Law Office of Richard D. Martin
Frankfort, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D.L.,

*Appellant-Respondent,*

v.

J.H., as next friend of E.M.C.,

*Appellee-Petitioner.*

September 16, 2020

Court of Appeals Case No.
20A-PO-917

Appeal from the Clinton Superior Court

The Honorable Donald E. Currie, Judge Pro Tempore

Trial Court Cause No.
12D01-2001-PO-25

**Bailey, Judge.**

# Case Summary

D.L. challenges a protective order issued against him for the benefit of a minor, E.M.C., at the request of her next-of-kin, J.H.[1] We reverse and remand with instructions to vacate the protective order.

# Issues

D.L. presents two issues for review, which we restate as the following:

I. Whether D.L. was entitled to dismissal because J.H. lacked statutory authority to obtain the protective order; and

II. Whether the findings, conclusion, and order are contrary to law as lacking evidentiary support.

# Facts and Procedural History

In December of 2019, D.L. was a teacher's aide and E.M.C. was a student at Clinton Central Elementary School. While they were alone in a teacher's lounge, D.L. asked E.M.C. "if she had hair on her p****." (Tr. at 16-17.) On

---

[1] J.H. has not filed an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for the appellee, and we apply a less stringent standard of review. *L.O. v. D.O.*, 124 N.E.3d 1237, 1239 (Ind. Ct. App. 2019) (citing *Jenkins v. Jenkins*, 17 N.E.3d 350, 351 (Ind. Ct. App. 2014)). Thus, we may reverse if the appellant establishes prima facie error, which is error at first sight, on first appearance, or on the face of it. *Id.* (citing *Jenkins*, 17 N.E.3d at 351-52).

January 10, 2020, J.H. filed a Petition for Order for Protection, alleging that D.L. had engaged in conduct that was sexual grooming of a child.[2]

[4] On March 11, 2020, the trial court conducted a hearing at which J.H. and Clinton County Sheriff's Deputy Daniel Roudebush testified. J.H. testified that E.M.C. no longer wanted to play alone outside or go shopping. According to J.H., her daughter had refused to return to Clinton Central Elementary School and J.H. "believed it would be beneficial" to E.M.C. if a protective order were issued. (*Id.* at 9.) Deputy Roudebush testified that he had interviewed D.L. and D.L. had admitted to the use of the word p**** while he and E.M.C. were alone in a teacher's lounge. At the conclusion of the testimony, D.L. moved for judgment on the evidence, arguing that one statement did not constitute a course of conduct. The trial court summarily denied the motion.

[5] On the same day, the trial court issued its findings and order. The trial court entered findings that it had jurisdiction over the matter, E.M.C. was not a protected intimate partner or child, D.L. had been given notice and an opportunity to be heard, and he did not agree to the issuance of the protective order. The order described the relationship between D.L. and E.M.C. as a relationship of "sexual grooming." Appealed Order at 1. Finally, the order stated that D.L. had "placed the child who needs protection in fear of physical

---

[2] "'Grooming' is 'the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point' where it is possible to perpetrate a sex crime against the victim." *Piercefield v. State*, 877 N.E.2d 1213, 1216 (Ind. Ct. App. 2007) (quoting *United States v. Johnson*, 132 F.3d 1279, 1283 n.2 (9th Cir. 1997)).

harm." (App. Vol. II, pg. 9.)  The trial court granted J.H.'s request for a protective order, for a term of two years.  D.L. now appeals.

# Discussion and Decision

## Standard of Review

[6]  "[I]n granting a protective order the trial court must sua sponte make special findings of fact and conclusions thereon." *Hanauer v. Hanauer*, 981 N.E.2d 147, 148 (Ind. Ct. App. 2013).  We apply a two-tiered standard of review to these findings and conclusions:

> [F]irst, we determine whether the evidence supports the findings, and second, whether the findings support the [order].  In deference to the trial court's proximity to the issues, we disturb the [order] only where there is no evidence supporting the findings or the findings fail to support the [order].  We do not reweigh the evidence, but consider only the evidence favorable to the ... [order].  Those appealing the ... [order] must establish that the findings are clearly erroneous.  Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made.  We do not defer to conclusions of law, however, and evaluate them de novo.

*Id*. at 149 (bracketed and omitted material in *Hanauer*).  In reviewing the sufficiency of the evidence to support an order for protection, we neither reweigh the evidence nor judge the credibility of witnesses.  *A.S. v. T.H.*, 920 N.E.2d 803, 806 (Ind. Ct. App. 2010).  We consider only the probative evidence and reasonable inferences supporting the trial court's judgment.  *Id.*

# Dismissal -- Statutory Basis

[7] J.H. petitioned for relief under the Indiana Civil Protection Order Act, Indiana Code Section 34-26-5-1, *et. seq.* ("the Act"). The Act exists to "promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; (2) protection and safety of all victims of harassment in a fair, prompt, and effective manner; and (3) prevention of future domestic violence, family violence, and harassment." *Id.*

[8] Section 2 of the Act describes persons authorized to file for relief under its provisions. Indiana Code Section 34-26-5-2(c), as corrected and amended effective July 1, 2020, provides:

> A parent, a guardian, or another representative may file a petition for an order for protection on behalf of a child against a:
>
> (1) family or household member who commits an act of domestic or family violence;
>
> (2) person who has committed stalking under IC 35-45-10-5 or a sex offense under IC 35-42-4 against the child;
>
> (3) person who has committed repeated acts of harassment against the child; or
>
> (4) person who engaged in a course of conduct involving repeated or continuing contact with a child that is intended to prepare or condition a child for sexual activity (as defined in IC 35-42-4-13).

[9] In her petition as next-of-kin of E.M.C., J.H. referenced the date of December 16, 2019 and alleged that D.L. "engaged in a course of conduct involving repeated or continuing contact with [E.M.C.] that is intended to prepare or condition a child for sexual activity (as defined by IC 35-42-4-13)." (App. Vol. II., pg. 13.) This mirrors the language of subsection (c)(4), added as of July 1, 2020. D.L. contends that J.H. was not authorized to seek a protective order because a specific provision related to sexual grooming was not in effect when he used the coarse language.[3]

[10] However, a petition for an order of protection seeks a civil remedy based upon the trial court's assessment of present circumstances. *See S.H. v. D.W.*, 139 N.E.3d 214, 219 (Ind. 2020). The petition is not akin to an Information filed by the State in a criminal matter and does not raise concerns of ex post facto criminal punishment.[4] At bottom, it appears that D.L. complains that J.H. lacked standing to seek relief for her child based upon her articulated grounds. At the hearing, D.L. did not raise such an objection nor did he move for dismissal of the petition on statutory grounds. D.L. has not shown that the trial court was obliged to sua sponte dismiss the petition.

---

[3] Indiana Code Section 34-26-5-2 was amended in 2019 and in 2020, intermittently including language relative to sexual grooming.

[4] Article 1, Section 24 of the Indiana Constitution provides: "No ex post facto law, or law impairing the obligation of contracts, shall ever be passed."

# Evidentiary Support

[11] D.L. contends that the evidence established only an isolated statement, which does not constitute a course of conduct posing a threat to E.M.C. and necessitating an order for her protection. D.L. further contends that the very limited findings by the trial court do not support the conclusion that E.M.C. was placed in fear of physical harm. Thus, D.L. argues that the order is contrary to law.

[12] Recently, in *S.H.*, the Indiana Supreme Court considered for the first time the meaning and application of the Act. The Court did so in the context of a two-year extension of an existing protective order granted in light of indirect contact on social media.

> [T]he Act is not one-sided. It balances the need to protect victims of domestic violence against the interests of those against whom a protective order is sought. Because of the potentially severe limitations on a restrained person's liberty, the petitioner must prove the respondent is a present, credible threat to the petitioner or someone in the petitioner's household. . . .
>
> Indeed, as our court of appeals has observed, "an improperly granted protective order may pose a considerable threat to the respondent's liberty." *Barger v. Barger*, 887 N.E.2d 990, 994 (Ind. Ct. App. 2008). For example, under state law, violating a protective order is punishable by confinement in jail, prison, or a fine, I.C. § 34-26-5-3(c), and subjects the offender to criminal prosecution for criminal stalking and invasion of privacy. *Id*. §§ 35-45-10-5 (criminal stalking), 35-46-1-15.1 (invasion of privacy). And, under federal law, once a protective order has been entered against the respondent, he may commit a crime if he buys,

receives, or possesses a firearm. *Id*. § 34-26-5-3(c) (citing 18 U.S.C. §§ 922(g), 2261, 2262).

*S.H.*, 139 N.E.3d at 217 – 19. The Court succinctly described the Act as requiring an objective, present, and credible ("meaning plausible or believable") threat. *Id.* The Court described the circumstances before it as "we have a single episode of physical violence with no follow-up act, no threat that the violence will recur, and no other reasonable grounds to believe that Sam presently intends to harm Diane or her family" and concluded, "[u]nder these circumstances, the Act does not permit the reissuance, renewal, or extension of the protective order." *Id.* at 220.

[13] Here, E.M.C. did not testify and, when J.H. attempted to convey her assessment of E.M.C.'s state of mind, the trial court sustained D.L.'s hearsay objections. J.H. testified that E.M.C. refused to return to Clinton Central Elementary School and was reluctant or unwilling to participate in some other activities, such as shopping or solitary outside play. Deputy Roudebush related D.L.'s admission to a single statement. He also testified that he had learned D.L. immediately resigned his position at the elementary school.

[14] The circumstances present in *S.H.* (indirect and repetitive social media statements – made years after a single episode of physical violence – leading to claimed fear of physical attack) are not identical to the circumstances present in this case (an isolated direct statement of a sexual nature to a minor raising parental fear of nefarious motivation). Yet, *S.H.* offers guidance in its discussion of the balancing of respective potential harms. The Act does not

contemplate a "considerable threat to a respondent's liberty" absent an objective, present, and credible threat. *Id.* at 219.

[15] Here, although D.L. has admitted to deplorable conduct, the incident was an isolated occurrence. The very limited evidence in this case fell short of describing a continued course of harassment or sexual grooming. And both the adult and child promptly discontinued making an appearance at the elementary school. There is no suggestion of record that D.L. had subsequent access, direct or indirect, to E.M.C. The evidence simply did not show the existence of a present threat. Accordingly, the evidence does not support the issuance of a protective order.

# Conclusion

[16] We reverse the trial court's judgment and remand with instructions to vacate the entry of the protective order against D.L.

[17] Reversed and remanded.

Vaidik, J., and Baker, Sr. J., concur.